IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CMA CGM, S.A., <br><br> Plaintiff-Counterdefendant, <br><br> v. <br><br> WATERFRONT CONTAINER LEASING COMPANY, INC., <br><br> Defendant-Counterclaimant. | Case No.: 12-cv-5467 JSC <br><br> **ORDER GRANTING IN PART DEFENDANT-COUNTERCLAIMANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

In this shipping container contract case, the parties dispute whether the lessee owes daily lease ("per diem") fees for shipping containers that remain in its possession notwithstanding the lessee's contention that the lessor has failed to honor the lessee's option to purchase those containers. Defendant Waterfront Container Leasing Company, Inc. ("Waterfront") now moves for summary judgment on this issue. (Dkt. No. 13.) The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). After carefully considering the evidence properly submitted, and having had the benefit of oral argument on May 30, 2013, the Court GRANTS Waterfront's motion in part.

**SUMMARY JUDGMENT EVIDENCE**

The facts relevant to this motion are not in dispute. This case arises from a written contract ("Lease 7006") under which Plaintiff CMA CGM, S.A., ("CMA") leased 7,262 cargo containers from Waterfront. The term of Lease 7006 was for a minimum of five years beginning on May 1, 2007. Lease 7006 includes a provision, Section 2, that gives CMA the option to purchase the cargo containers provided that, among other things, the containers remain continuously under lease for at least five years.

On January 30, 2012, CMA wrote to Waterfront concerning CMA's exercise of its purchase option.[1] Waterfront responded the next day, informing CMA that the purchase option was void because CMA was in default under the lease. According to Waterfront, Lease 7006 includes a provision that voids the purchase option under such circumstances. CMA contends that the governing version of Lease 7006 does not contain that provision. In any event, CMA paid the per diem fees under Lease 7006 through April 30, 2012.

On May 8, 2012, Waterfront informed CMA that it was terminating the lease. Waterfront demanded return of the containers and notified CMA that Waterfront would charge per diem fees until the containers were redelivered. The parties entered mediation two months later. Although the mediation did not resolve all the parties' disputes, CMA agreed to begin returning the containers that remained in its possession. As of March 31, 2013, 5,361 out of the 7,262 containers remain in CMA's possession.

Following the mediation, CMA filed suit against Waterfront over its refusal to honor the purchase option. Waterfront counterclaimed for, among other things, unpaid per diem charges beginning on May 1, 2012. As of March 31, 2013, the per diem fees totaled $1,825,679.04. In its motion, Waterfront seeks the unpaid per diem fees as well as an order requiring CMA to return the containers.

//

//

---

[1] The parties dispute whether CMA properly exercised the purchase option; specifically, whether CMA was required to, and did, make a valid tender of the purchase price. Resolution of that question, however, is not necessary for the disposition of this motion.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000). "[T]he moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial . . . and persuade the court that there is no genuine issue of material fact." *Id.*

If the "moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. If the nonmoving party fails to do so, "the moving party wins the motion for summary judgment." *Id.* "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Id*. In deciding whether there exist genuine issues of material fact, the court draws all reasonable factual inferences in favor of the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

**DISCUSSION**

Waterfront seeks summary judgment on its breach of contract claim, which alleges that CMA breached Lease 7006 by failing to pay per diem fees for containers remaining in its possession since May 1, 2012. CMA does not challenge Waterfront's right to per diem fees following termination of the lease as a general matter; rather, CMA opposes Waterfront's motion on the ground that such per diem fees were not owed following CMA's valid exercise of the purchase option. CMA contends Waterfront should have honored the purchase option and ownership of the containers should have accordingly transferred to CMA. CMA further contends that since Waterfront's entitlement to per diem fees is contingent on a finding that Waterfront's version of the contract governs and the purchase option is invalid, Waterfront's motion is premature. CMA's arguments are unpersuasive.

3

It is uncontested that both versions of the lease contain the same provisions requiring CMA to pay per diem fees while it retains possession of the containers, including following the termination of the lease. (*See* Dkt. No. 5-1, Exs. A & B, Typed Clause 8 & Printed Clause 14.) Nothing in the lease excuses per diem fees if a dispute arises between the parties. Thus, the contract requires CMA to pay Waterfront per diem fees notwithstanding the parties' dispute involving the purchase option.

CMA's reliance on cases involving options to purchase real property does not compel a different result. In those cases, courts have refused to find lessees liable for failure to pay rent once the lessee has properly exercised an option to purchase the property. *See, e.g., Sacks v. Hayes*, 146 Cal. App. 2d 885, 887-88 (1956). *Sacks* states that

> Where the relation of landlord and tenant exists under the terms of a written lease, containing an option to purchase which the lessee exercises, he is no longer in possession as a tenant, but his possession is that of a vendee. The lessor is not entitled to rent after the option to purchase is exercised unless there is in the lease an express stipulation therefor. The exercise of the option extinguishes the lease and terminates the relation of landlord and tenant. The lease and all its incidents, express and implied, are blotted out of existence, and the relation of vendor and vendee created.

146 Cal. App. 2d at 887-88 (quoting *Cities Serv. Oil Co. v. Viering*, 404 Ill. 538, 544 (1949)) (internal quotation marks and citations omitted). The theory underlying this rule is that once an option is properly exercised, "a complete and absolute contract was created binding upon the plaintiff to buy and the defendant to sell, thereby vesting the equitable ownership of the premises in the plaintiff." *Cities Serv.*, 404 Ill. at 545; *see also McCollough v. Home Ins. Co. of N.Y.*, 155 Cal. 659, 662 (1909) ("A vendee in possession of [real] property under a valid contract of purchase which he is entitled to enforce specifically is the holder of such equitable title."). This reasoning is consistent with the rule that when the purchase option for real property is accepted, it "entitles [the purchaser] to call for specific performance." *Smith v. Bangham*, 156 Cal. 359, 365 (1909); *see also* Cal. Civ. Code § 3387 ("It is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation. In the case of a single-family dwelling which the party seeking performance intends to occupy, this presumption is conclusive. In all other cases, this presumption is a presumption affecting the burden of proof."). Once equitable ownership

4

is vested in the vendee, the lease agreement is necessarily extinguished because the landlord to the lease agreement no longer maintains equitable title.

Not so for purchase options involving the sale of personal property. Although true that once an option is accepted it transforms the option into a bilateral contract to buy and sell, *see Torlai v. Lee*, 270 Cal. App. 2d 854, 858 (1969), CMA does not cite, and the Court has not found, any authority outside the real property context supporting the contention that a breach of the option by the optionor or a breach of the bilateral contract by the vendor results in equitable title vesting in the optionee/vendee. Further, the lease itself provides that title shall not pass until the lessee pays the purchase option price, which has not occurred. (Dkt. No. 5-1, Exs. A & B, Typed Clause 2.) Nor is there generally a right to specific performance in cases involving non-unique personal property. As CMA acknowledges,

> [t]he only substantive difference between an option to buy real property and an option to buy containers is that each piece of real property is considered under the law to be unique, allowing the buyer to remain in possession of the property and seek specific performance of the sale. The courts will generally not order specific performance of the sale of fungible items like containers, requiring the buyer to seek its remedy through a suit for damages, such as CMA CGM is doing here, while returning the containers.

(Dkt. No. 16 at 8 n.3 (citations omitted).) Thus, unlike in some real property actions, CMA's exercise of the purchase option would not have extinguished the lease agreement and the lessor-lessee relationship between the parties. Rather, any such exercise would have merely created a *separate* bilateral contract between the parties, with Waterfront as vendor and CMA as vendee.

Although the Court concludes that as a matter of law CMA is liable for per diem fees under the lease, the Court will not issue a judgment awarding Waterfront its damages at this time. Rule 54(b) of the Federal Rules of Civil Procedure provides:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time

before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Waterfront has not explained why "there is no just reason for delay." Given the possibility of dual contracts, the Court concludes that a delay in awarding judgment is warranted. Awarding Waterfront an unconditional judgment on the per diem fees at this time could result in CMA simply paying a damages amount that Waterfront, if found to have breached the option contract, would eventually be required to pay back in a similar amount. In other words, the parties' damages may offset. Waterfront, for example, may be liable to CMA for damages CMA incurred and will incur following the return of the containers that CMA claims it should possess pursuant to the option contract. Thus, while the Court finds that CMA is liable as a matter of law for per diem fees even if it properly exercised a valid purchase option, the Court declines to award Waterfront a separate judgment on these unpaid fees.

Finally, Waterfront's request for an order requiring CMA to return the containers pursuant to the lease is denied. Waterfront has not explained why it is entitled to specific performance of the lease. In fact, Waterfront argues in regards to its alleged breach of the purchase option that specific performance is *not* appropriate in this case because containers constitute fungible personal property. At the hearing, Waterfront explained that specific performance is appropriate to remedy CMA's breach because CMA previously agreed to return the containers. However, it is not relevant to the specific performance analysis that CMA previously agreed to return the containers. *See Real Estate Analytics, LLC v. Vallas*, 160 Cal. App. 4th 463, 472 (2008) ("To obtain specific performance after a breach of contract, a plaintiff must generally show: (1) the inadequacy of his legal remedy; (2) an underlying contract that is both reasonable and supported by adequate consideration; (3) the existence of a mutuality of remedies; (4) contractual terms which are sufficiently definite to enable the court to know what it is to enforce; and (5) a substantial similarity of the requested performance to that promised in the contract.") (internal quotation marks omitted).

## CONCLUSION

For the reasons stated above, Waterfront's motion is GRANTED in part to the limited extent as set forth above.

**IT IS SO ORDERED.**

Dated: May 31, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE