IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CMA CGM, S.A., | Case No.: 12-cv-5467 JSC |
| Plaintiff-Counterdefendant, | **ORDER RE: PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| WATERFRONT CONTAINER LEASING COMPANY, INC., | |
| Defendant-Counterclaimant. | |

In this shipping container contract case, the parties' remaining disputes center around damages issues.  Now pending before the Court are the motions for partial summary judgment of both Plaintiff CMA CGM, S.A. ("CMA") and Defendant Waterfront Container Leasing Company, Inc. ("Waterfront").  Having carefully considered the parties briefing, and having had the benefit of oral argument on December 12, 2013, the Court rules as set forth below.

**SUMMARY JUDGMENT EVIDENCE**

The complete facts underlying the present litigation may be found in the Court's previous orders in this case.  (See Dkt. Nos. 19 & 35.)  For purposes of the present motions, the Court provides the following abridged facts.

In or around March 2007, the parties entered into Lease 7006, a five-year term lease for 7,271 containers, in addition to other separate leases.  Lease 7006 includes a purchase option provision, which provides that

> Lessee is granted a Purchase Option provided that Equipment remains continuously under lease for a minimum period of Five (5) years and subject to the limitation that the sale will be for the totality of the units under lease at the time of the conclusion of the agreed lease period.  Unit purchase price shall be as follows.
>
> 20' Dry Cargo Container: US$750.00
>
> 40' Dry Cargo Container: US$1,200.00
>
> 40' HC Dry Cargo Container: US$1,300.00
>
> Lessee shall notify Lessor of intent to exercise the Purchase Option by Sixty (60) day written notice.  Lessor shall issue an invoice for the amount due and Lessee shall pay such invoice before the conclusion date of the lease period as set forth in the Recitals above.  Title shall pass to Lessee following receipt of Purchase Option price and per diem rates up to and including the last day of the agreed lease period.

(Dkt. No. 46-3, Ex. 1 ¶ 2.)  On January 30, 2012, CMA sent Waterfront a "Purchase Option Notice," seeking to exercise the purchase option provision.  Waterfront refused to honor the notice.

In May 2012, Waterfront demanded that CMA return all of the containers.  Beginning in July 2012, approximately three months before the commencement of this action, CMA began returning the containers to Waterfront.  At the time the present motions were filed, approximately half of the Lease 7006 containers had been returned to Waterfront.

## PROCEDURAL HISTORY

Earlier in this action, the Court granted in part Waterfront's motion for partial summary judgment, concluding that, notwithstanding the purchase option provision, CMA was liable for all per diem charges incurred under Lease 7006 until CMA returned the containers.  (Dkt. No. 19 at 4.)  Subsequently, the Court granted CMA's motion for partial summary judgment, finding that CMA exercised the purchase option provision, and Waterfront breached that provision by failing to issue an invoice for the amount due.  (Dkt. No. 35 at 12-13.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000). "[T]he moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial . . . and persuade the court that there is no genuine issue of material fact." *Id.*

If the "moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. If the nonmoving party fails to do so, "the moving party wins the motion for summary judgment." *Id.* "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Id.* In deciding whether there exist genuine issues of material fact, the court draws all reasonable factual inferences in favor of the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

### DISCUSSION

The parties' motions contain the following three disputes: 1) whether Waterfront is entitled to the "Fixed Replacement Charge" for a container that is found to have suffered a "loss or constructive loss . . . during the lease period" of Lease 7006 (Dkt. No. 46-3, Ex. 1 ¶ 20); 2) whether CMA is entitled to specific performance for Waterfront's breach of the purchase option provision; and 3) whether Waterfront or CMA is entitled to prejudgment interest. The Court discusses each issue below in turn.[1]

//

//

---

[1]  Waterfront also contends that the Court should grant it summary judgment for its damages claim for 41 "[p]resumably" lost containers under a separate lease, Lease 5004. (*See* Dkt. No. 46 at 7.) However, the Court declines to rule on whether summary judgment is appropriate on a claim related to Lease 5004 given CMA's statement that "only factual disputes in accounting" remain and the parties are actively working to reconcile their dispute. (Dkt. No. 47 at 1.) Indeed, at oral argument CMC conceded that it owes Waterfront money under Lease 5004.

United States District Court
Northern District of California

United States District Court
Northern District of California

**A.**     **Fixed Replacement Charge**

Waterfront contends that is entitled to damages under Lease 7006 for containers that have been lost or destroyed (the "Fixed Replacement Charges" or "FRC").  Waterfront believes that the amount of lost or destroyed containers "may be significant" given the delay in CMA's return of the containers and CMA's Vice President of Logistics' admission that some portion of the unreturned containers were lost or destroyed.  The Court concludes that Waterfront is not entitled to FRC under Lease 7006.

Paragraph 20 of Lease 7006 is titled "Replacement Value in the Event of Loss or Total Damage" and provides as follows:

> In the event of loss or constructive total loss of Equipment through damage during the lease period of this Agreement, Lessee shall pay Lessor a Fixed Replacement Charge as follows:
>
> US$2,200.00 per unit of 20' Dry Cargo Container
>
> US$3,520.00 per unit of 40' Dry Cargo Container.
>
> US$3,740.00 per unit of 40' HC Dry Cargo Container.
>
> Should it be determined within Six (6) months from the declaration of total loss that such an event did not occur, Lessor will reimburse the previously paid replacement value, less per diem due from the date of the original occurrence until the restatement date plus an administration fee of US$100.00 per unit of Equipment.  Lessor will not entertain request by Lessee to reinstate any unit of Equipment that was the subject of a loss declaration, after the said six-month period.
>
> Payment for loss, constructive loss or casualty value does not constitute a sale of Equipment. Lessor retains ownership and salvage rights unless agreed to by separate treaty.

(Dkt. No. 46-3, Ex. 1¶ 20.)  While the Court agrees that this provision applies generally to "any loss or constructive loss . . .  during the lease period," the Court disagrees that the provision applies where Waterfront has breached the purchase option provision.  Paragraph 20 refers explicitly to the "Replacement Value" or "Replacement Charge" the lessee must pay the lessor if a container is lost or damaged.  The need this provision addresses is Waterfront's need to replace lost or damaged containers.  But this need to replace is not implicated where Waterfront has breached the purchase

4

United States District Court
Northern District of California

1  option provision, which requires the sale of the "totality of the units." (*Id.* at ¶ 2.)  Because

2  Waterfront was obligated to issue a sales invoice to CMA for the "totality of the units," no need for

3  Waterfront to *replace* any container pursuant to Paragraph 20 existed following Waterfront's breach.[2]

4  In other words, the containers were CMA's to lose, and Waterfront had nothing to replace under

5  Paragraph 20.

6  Waterfront's argument that "if CMA is allowed to pay only the lower purchase option prices

7  for lost containers, CMA will pay less than it should have under the terms of the Lease" ignores its

8  own breach of the purchase option.  (Dkt. No. 48 at 4.)  If Waterfront had not breached the purchase

9  option, CMA would have purchased every container.  Under this scenario where Waterfront abides

10  by its contractual obligations, CMA purchases the containers at the lower purchase option prices—

11  even for containers that are lost—pursuant to the lease.  Waterfront's alternative scenario posits that

12  since it refused to sell the containers at the purchase option prices—and thus breached the contract—

13  CMA is now required to pay the FRC for the lost containers, which are *triple* the bargained for

14  purchase option prices.  The Court refuses to award Waterfront a windfall for its contractual breach.

15  Under the circumstances of this case, Paragraph 20 does not apply to any lost or damaged

16  containers.[3]

**B.  Whether CMA is Entitled to Specific Performance for Waterfront's Breach of the Purchase Option**

19  CMA moves for specific performance, its third cause of action in its Amended Complaint.

20  (See Dkt. No. 3, p.6-7.)  "Specific performance may be decreed where the goods are unique or in

21  other proper circumstances."  Cal. Comm. Code § 2716(1).  CMA asserts that its request for specific

22  performance for Waterfront's breach of the purchase option should be granted under the "other

23  proper circumstances" provision in Section 2716.  CMA further contends that specific performance—

24  namely, CMA maintaining possession of the containers and this Court ordering Waterfront to abide

---

[2]  Waterfront does not contend that it sought any RFC prior to CMA's exercise of the purchase option provision and Waterfront's breach of that provision.

[3]  Because the Court finds that Paragraph 20 does not apply in this action, the Court need not address whether a lost or damaged container must be lost or damaged "during the lease period" to recover FRC where the lessee maintains possession of the containers after the lease has ended.

by the purchase option—is the most practical and logical means by which to deal with the 3,000-plus containers that remain in CMA's possession.

On the one hand, the circumstances in this case appear "proper" for a grant of specific performance: rather than have CMA needlessly ship 3,000 containers to various points around the globe just so Waterfront can then sell them and then ship them again to various points around the globe, CMA will simply purchase the containers—which are already in its possession—from Waterfront and then CMA will be able to sell the containers.  In other words, specific performance eliminates the waste of needlessly shipping 3,000-plus containers.  On the other hand, CMA has not cited any case where specific performance has been granted under similar circumstances.

The Court notes that, contrary to Waterfront's assertion, the ability to cover does not necessarily preclude a grant of specific performance in this case.  As an initial matter, the Official Comments to Section 2716 do not provide that "other proper circumstances" is limited to situations where the buyer cannot cover; rather, the comment provides "uniqueness is not the sole basis of the remedy under this section for the relief may also be granted 'in other proper circumstances' and inability to cover is *strong evidence* of 'other proper circumstances.'"  Cal. Comm. Code § 2716, UCC Comment ¶ 2 (emphasis added).  In addition, the concept of covering under the circumstances of this case highlights the waste Waterfront's proposal would produce.  Waterfront asserts that CMA can cover its damages by obtaining replacement containers and then, presumably, obtain from Waterfront damages in the amount of the difference between the purchase price of the "covered" containers and the purchase option price under the lease.  This ability to cover, however, appears to require additional wasteful movements of thousands of shipping containers.  Not only would CMA still be required to return the leased containers to Waterfront—who would then presumably sell them as it has with the already returned containers—its covering would require purchasing containers from a third-party, which could include a physical transfer of those newly purchased containers from seller to buyer.  The Court further notes that an order of specific performance would significantly hasten the amount of time needed to resolve this litigation.  If specific performance is awarded, the matter is resolved with an exchange of the purchase price and title; if it is not awarded, the parties agree that CMA would need at least six months to return the remaining 3,000-plus containers to Waterfront.

United States District Court
Northern District of California

1  Because the parties appear to agree that a final determination of damages cannot be made until

2  Waterfront sells all of the containers, the litigation will extend well into next year.  This circumstance

3  further weighs in favor of a grant of specific performance here.

4          Waterfront's insistence that the Court previously ruled that specific performance is not

5  available is wrong.  In holding that CMA had not proved that equitable title to the containers had

6  passed to CMA, the Court's previous order distinguished CMA's real property cases on the ground

7  that specific performance is "generally" not available for personal property in contrast to real

8  property where it is a matter of right.  (Dkt. No. 19 at 5.)  The Court was not presented with the

9  question of whether specific performance of the purchase option provision is appropriate pursuant to

10 Section 2716.  The question is now presented.  The Court concludes that the particular circumstances

11 of this case make an award of specific performance "proper" within the meaning of Section 2716,

12 notwithstanding that the goods are not unique.[4]

**C.      Whether Waterfront or CMA is Entitled to Prejudgment Interest**

14         California law provides that "[e]very person who is entitled to recover damages certain, or

15 capable of being made certain by calculation, and the right to recover which is vested in him upon a

16 particular day, is entitled also to recover interest thereon from that day."  Cal. Civ. Code § 3287(a).

17 "Under this provision, prejudgment interest is allowable where the amount due plaintiff is fixed by the

18 terms of the contract, or is readily ascertainable by reference to well-established market values.  On

19 the other hand, interest is not allowable where the amount of the damages depends upon a judicial

20 determination based on conflicting evidence."  *Leaf v. Phil Rauch, Inc.*, 47 Cal. App. 3d 371, 375

21 (1975) (citations omitted).  Further, "[a]ny legal rate of interest stipulated by a contract remains

22 chargeable after a breach thereof, as before."  *Id.* at § 3289(a); *see also In re Exxon Valdez*, 484 F.3d

23 1098, 1101 (9th Cir. 2007) ("[S]tate law applies to [a] claim for prejudgment interest under state law

24 unless federal law preempts it.").

25

26

_____

27 [4]  Further, as Waterfront stated at the hearing, its opposition to an order of specific performance is
made only insofar as Waterfront is entitled to Fixed Replacement Charges.  Because the Court has

28 concluded that Waterfront is not entitled to such charges under Lease 7006, Waterfront's opposition
to specific performance no longer stands.

United States District Court
Northern District of California

1    The parties agree that only the party with the greater amount of damages may collect

2 prejudgment interest under California law.  (*See* Dkt. No. 47 at 6); *see also Great W. Drywall, Inc. v.*

3 *Roel Const. Co., Inc.*, 166 Cal. App. 4th 761, 770 (2008) ("Because Roel's award exceeds Great

4 Western's award . . . Great Western may not recover any prejudgment interest.").  Such prejudgment

5 interest, however, may be collected on only the amount remaining after the damages of the party with

6 the greater claim are offset; that is, "only the balance bears interest."  *Great Western*, 166 Cal. App.

7 4th at 768 (internal quotation marks omitted); *see also Coleman Eng'g Co. v. N. Am. Aviation, Inc.*,

8 65 Cal. 2d 396, 409 (1966) ("[O]ffsets of the defendant, even where unliquidated, do not preclude the

9 allowance of interest *on the balance* of the plaintiff's claim.") (emphasis added).  Thus, the Court

10 must determine the precise damages amount for both CMA and Waterfront.

11    Because the Court grants CMA's request for specific performance, CMA concedes that, at the

12 end of the day, Waterfront will have the greater damages claim and thus be entitled to interest on the

13 amount that remains after CMA's damages are offset.  Specifically, since CMA will pay the purchase

14 option price for the approximately 3,000 containers it currently possesses, receive title in exchange,

15 and thus not incur damages as to those containers, CMA's damages are limited to the lost profits for

16 the 4,060 containers it has already returned to Waterfront.  CMA relies on Waterfront's calculation of

17 CMA's damages for the 4,060 containers CMA has returned, which totals $1,921,872.  (*See* Dkt. No.

18 46-1, Appendix B, Table 3.)

19    Regarding Waterfront's damages, it is undisputed that CMA owes Waterfront $2,370,841 in

20 unpaid per diem charges as of October 31, 2013.  (*See id.* at Appendix B, Table 1.)  The Court rejects

21 Waterfront's argument that its damages include the unpaid purchase option prices for the unreturned

22 containers.  Such an assertion is nonsensical given Waterfront's breach of the purchase option and its

23 continued insistence that CMA return all the containers rather than purchase them pursuant to the

24 option.  As CMA correctly observes, payment of the purchase option prices would be specific

25 performance of the contract, not an award of damages to Waterfront.

26    In sum, the grant of specific performance cuts off CMA's damages at roughly $1,921,872, and

27 thus Waterfront's $2,370,841would prevail as the greater amount of damages.  Waterfront is entitled

28 to prejudgment interest on the difference between the two damages figures, a difference which

currently stands at $448,969.  The parties agree that Waterfront's prejudgment interest on this differential amount is calculated at a rate of 1.5% per month pursuant to the lease.  (*See* Dkt. No. 46-3, Ex. 1 ¶ 19.)

**CONCLUSION**

For the reasons stated above, Waterfront is not entitled to Fixed Replacement Costs under Lease 7006, Waterfront shall specifically perform its duties under the purchase option as to the unreturned containers, and CMA shall pay to Waterfront prejudgment interest at a rate of 1.5% per month on the difference between the parties' damages as discussed above.

Finally, the Court sets a further Case Management Conference for February 13, 2014 at 1:30 p.m.

**IT IS SO ORDERED.**

Dated:  December 13, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

United States District Court
Northern District of California

9