| | |
|---|---|
| 1 | **COX, WOOTTON, LERNER,** |
| | **GRIFFIN, HANSEN & POULOS, LLP** |
| 2 | Mitchell S. Griffin (SBN 114881) |
| | mgriffin@cwghp.com |
| 3 | 190 The Embarcadero |
| | San Francisco, CA 94105 |
| 4 | Telephone No.: 415-438-4600 |
| | Facsimile No.: 415-438-4601 |

Attorneys for Plaintiff and
Counter defendant CMA CGM, S.A.

**EMARD DANOFF PORT TAMULSKI & WALOVICH LLP**
Eric Danoff (SBN 60915)
edanoff@edptlaw.com
Katharine Essick (SBN 219426)
kessick@edptlaw.com
49 Stevenson Street, Suite 400
San Francisco, CA 94105
Telephone No.: 415-227-9455
Facsimile No.: 415-227-4255

Attorneys for Defendant and Counterclaimant
WATERFRONT CONTAINER LEASING
COMPANY, INC.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| CMA CGM, S.A. | Case No.: **C 12 5467 JSC** |
| Plaintiff, | **PROPOSED FINAL PRETRIAL ORDER** |
| V. | **PRETRIAL CONF: 5/29/14** |
| WATERFRONT CONTAINER LEASING COMPANY, INC. | **TIME: 1:30 P.M.** |
| | **15TH FLOOR, CTRM. F** |
| Defendant. | **TRIAL: 6/23, 6/24, 2014** |
| WATERFRONT CONTAINER LEASING COMPANY, INC. | |
| Counterclaimant, | |
| V. | |
| CMA CGM, S.A. | |

Counter defendant.

Plaintiff and counter defendant CMA CGM, S.A. (hereinafter "CMA CGM") and defendant and counterclaimant Waterfront Container Leasing Company, Inc. ("Waterfront") submit this Joint Pretrial Statement.

## 1. OVERVIEW

The main issues in this case involve a lease contract for approximately 7,200 cargo containers, entered into in 2007 (designated the "7006SF lease"). Plaintiff CMA, which is an ocean carrier that operates a fleet of cargo ships, was the lessee of the containers. The lessor was defendant Waterfront Container Leasing Company, Inc. ("Waterfront"). The lease contained an option by which CMA could purchase the leased containers from Waterfront, at prices set out in the lease. The terms of this option were disputed, namely whether CMA's default in payment of rental fees voided the option. When CMA gave notice in January 2012 that it intended to exercise the purchase option, Waterfront refused to sell the containers to CMA. CMA then filed this suit for breach of contract. Waterfront counter-sued for unpaid daily rental fees on the containers (known as "per diem") and other charges. This case also involves amounts due under a lease designated "Lease 5004."

The Court has issued three Orders in this matter which have eliminated issues except how damages should be determined. The Court ruled (on May 31, 2013 – Document 19) that CMA owed to Waterfront ongoing daily per diem for the containers pursuant to the terms of the 7006SF lease. The Court ruled (on October 15, 2013 – Document 35) that Waterfront's refusal to honor CMA's exercise of the purchase option was a breach of the 7006SF lease contract. The Court subsequently ruled (on December 13, 2013 – Document 50) that Waterfront must specifically perform the purchase option sale with regard to the containers that had not yet been returned by CMA to Waterfront.

Pursuant to the December 13, 2013 ruling, CMA stopped returning the

containers to Waterfront in January 2014, and, on February 19, 2014, Waterfront issued an invoice to CMA in the amount of $2,509,550, representing the contractually agreed purchase option price for the 2,590 containers still in CMA's possession. On February 27, 2014, CMA paid that amount in full to Waterfront.

After the Court made the above-referenced rulings, the parties attempted to reach an agreement on the amount of damages that Waterfront owed to CMA, and how much per diem and other charges CMA owed to Waterfront. An agreement could not be reached on either issue.

The remaining issues concern how the respective parties' damages should be determined and calculated. This requires the resolution of both factual and legal issues. All of the legal and factual issues are more fully set-out in the parties' respective Trial Briefs, being submitted to the Court on the same date as the submission of this Pretrial Statement.

## 2. CMA'S DAMAGE CLAIMS

The issues presented by CMA's damages claims involve legal and factual issues.

### a. The Returned Containers

CMA began returning the containers to Waterfront in August of 2012. The returns ended in January 2014, following the Court's December 2013 Order regarding specific performance. Between August 2012 and January 2014, it is undisputed that CMA returned 4,590 containers to Waterfront. It is also undisputed that between January 2012, when CMA exercised the purchase option, and today, the market price of cargo containers has declined.

CMA claims that it is entitled to the market price of the 4,590 containers, as it was at the time CMA learned of the breach of contract (i.e. early 2012) minus the agreed purchase option price, pursuant to California Commercial Code Section 2713. CMA intends to present evidence of that

3

Case No. C-12-5467-JSC

market price at trial.

Alternatively, CMA contends that, had Waterfront sold the containers to CMA in early 2012 pursuant to the purchase option, CMA could have sold the containers within 6 months at the then-prevailing market prices. CMA intends to present evidence at trial, proving that it had the ability to sell the containers in 2012 for then-prevailing market prices. In either case, CMA contends that it is entitled to the market price of the containers in 2012, minus the purchase option price.

Waterfront contests both alternative measures of damages CMA asserts for the containers that CMA returned. Waterfront sold the containers that CMA returned. Waterfront contends that it sold the containers for fair market values and that CMA could not have sold the containers for better prices than Waterfront sold them for, and thus CMA's damages should be measured by those actual sales prices. Alternatively, if the damages for the returned containers are to be measured by the potential selling price when the purchase option was to be consummated at the end of the lease on April 30, 2012, damages should be based on the fair market value of the sale price under a sale/leaseback to TAL, because CMA was going to include the Waterfront containers in that sale/leaseback. In the latter alternative, however, CMA's damages must be reduced by the amount of damages CMA caused to Waterfront by failing to return the containers by October 31, 2012, as the lease required and as CMA promised to do and could have done.

In sum, the parties seek a ruling as to how CMA's damages should be measured. The parties are prepared to present evidence supporting their respective damages calculations.

b. **The Containers Sold to CMA**

It is undisputed that the market price of the containers has declined between early 2012, when CMA attempted to exercise the purchase option,

4

Case No. C-12-5467-JSC

PROPOSED FINAL PRETRIAL ORDER

and today. For the 2,590 containers that Waterfront sold to CMA in February 2014 (for the purchase option price), CMA claims damages equal to the market price of the containers in 2012 and the lower market price as of February 2014. CMA intends to present evidence of those differing market prices.

Waterfront contests that CMA is entitled to that amount of damages in connection with the 2,590 containers that Waterfront sold to CMA in February 2014.

In sum, the parties seek a ruling whether CMA is entitled to damages in connection with the containers that it purchased from Waterfront in February 2014 and, if so, how those damages should be measured. The parties are prepared to present evidence supporting their respective damages calculations.

3. **WATERFRONT'S DAMAGE CLAIMS**

   a. **Per Diem**

   Waterfront contends that it is entitled to unpaid per diem for the 4,590 returned containers, up to the date until each was returned, plus interest thereon at the contract rate. Waterfront also contends that it is entitled to unpaid per diem for the 2,590 containers that it sold to CMA in February 2014, plus interest thereon, until CMA paid for them on February 27, 2014.

   CMA contends that the running of per diem should have stopped in October 2013, when the Court ruled that Waterfront had breached the 7006SF lease. CMA contends that, at the latest, per diem should have stopped in December 2013, when the Court ordered specific performance of the purchase option with regard to the containers still in CMA's possession.

   In sum, the parties seek a ruling as to when per diem should cease running under Lease 7006.

   Waterfront also seeks per diem and other charges owed under Lease 5004.

b. **Damage to Returned Containers**

Waterfront contends that it is entitled to compensation for the repair costs for the amount of damage that was assessed to the 4,590 containers under Lease 7006 that CMA returned to Waterfront.

CMA contests that Waterfront is entitled to this element of damages.

The parties' respective legal arguments on this issue are set out more fully in their respective Trial Briefs.

4. **EXHIBITS**

The parties' respective Exhibit Lists are attached to this Pretrial Statement.

5. **WITNESSES**

The parties' respective Witness Lists are attached to this Pretrial Statement.

6. **TRIAL ESTIMATE**

The parties believe that the trial of the disputed factual issues can be completed within the two days scheduled for trial.

7. **OTHER MATTERS**

Discovery is complete, including expert depositions. The parties are ready to proceed with trial.

Dated: May 22, 2014

COX, WOOTTON, LERNER,
GRIFFIN, HANSEN & POULOS, LLP
Attorneys for Plaintiff and
Counterdefendant CMA CGM, S.A.

By: /s/
Mitchell S. Griffin

Dated: May 22, 2014

EMARD DANOFF PORT TAMULSKI & WALOVICH LLP
Attorneys for Defendant and Counterclaimant WATERFRONT CONTAINER LEASING CO., INC.

By: /s/ _____
    Eric Danoff

IT IS SO ORDERED.

May ____, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge