UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CMA CGM, S.A.,<br>　　　　　　Plaintiff,<br>　v.<br><br>WATERFRONT CONTAINER LEASING COMPANY, INC.,<br>　　　　　　Defendant. | Case No.  12-cv-05467-JSC<br><br>**MEMORANDUM AND ORDER** |

Following a two-day bench trial in this breach of contract case, the Court is called upon to adjudicate the parties' unresolved damages issues.  After carefully considering the parties' submissions and the evidence introduced at trial, and for the reasons explained below, the Court orders as follows.

## BACKGROUND

### A.    Factual Background

This case arises from a written contract ("Lease 7006") under which Plaintiff CMA CGM, S.A. ("CMA"), an ocean carrier that operates a fleet of cargo ships, leased approximately 7,000 cargo containers from Defendant Waterfront Container Leasing Company, Inc. ("Waterfront"). The term of Lease 7006 was for a minimum of five years beginning on May 1, 2007.  Lease 7006 included a provision, Section 2, that gave CMA the option to purchase the cargo containers.  On January 30, 2012, CMA informed Waterfront that it was exercising the purchase option. Waterfront responded the next day, informing CMA that it would not honor the purchase option; that is, according to Waterfront, Lease 7006 included a provision that voided the purchase option if CMA was in default under the lease.

On May 8, 2012, Waterfront gave formal notification to CMA that it was terminating the lease. Waterfront demanded return of the containers and notified CMA that Waterfront would charge per diem fees until the containers were redelivered. CMA paid the per diem fees under Lease 7006 through April 30, 2012 and agreed to begin returning the containers that remained in its possession. However, the process of returning the containers scattered across the globe was not speedy; CMA returned the containers in the normal course of business, which meant that a container would be returned to Waterfront only if it happened to be at a Waterfront depot where Waterfront was accepting empty containers.

Meanwhile, CMA filed suit against Waterfront in October 2012 over its refusal to honor the purchase option. Waterfront counterclaimed for, among other things, unpaid per diem lease charges beginning on May 1, 2012. As this litigation progressed, the Court ordered specific performance of the purchase option in December 2012 and the return of containers to Waterfront ceased.

From the time CMA began returning containers to the time it stopped, CMA returned 4,580 containers. CMA purchased from Waterfront the remaining 2,590 containers in CMA's possession at the prices set forth in the purchase option, namely, 20-foot containers at $750; 40-foot containers at $1,200; and 40-foot cube containers at $1,300. CMA's payment to Waterfront of $2,509,550 was completed on February 27, 2014. No other payments between the parties have been made.

**B.      Previous Rulings in this Case**

The Court has previously ruled on four motions for partial summary judgment in this action. First, the Court granted in part Waterfront's motion for partial summary judgment on Waterfront's claim that CMA had breached Lease 7006 by failing to pay per diem fees for containers remaining in its possession since May 1, 2012, after the lease expired. (Dkt. No. 19.) The Court reasoned that CMA's obligation to pay per diem fees existed independent of the purchase option provision, and rejected CMA's contention that Waterfront's breach of the purchase option vested CMA with equitable ownership of the containers.

The Court subsequently granted CMA's motion for partial summary judgment as to whether Waterfront breached the purchase option provision. (Dkt. No. 35.) The Court first concluded that the operative version of Lease 7006 did not include Waterfront's proposed default provision, which Waterfront contended voided the purchase option. The Court further concluded that Waterfront breached the purchase option when it refused to invoice CMA for the containers by May 1, 2012, the end of the lease term.

Finally, in late 2013, the Court denied Waterfront's motion for partial summary judgment on its claim for damages for the cost of replacing containers that had been lost or destroyed. (Dkt. No. 50.) The Court reasoned that "the containers were CMA's to lose, and Waterfront had nothing to replace under [Lease 7006]." (*Id.*) The Court granted CMA's motion for specific performance of the purchase option provision in light of the record then in front of the Court, which showed that unnecessary waste would result if CMA continued to return containers already in its possession. The Court also ruled that prejudgment interest may be awarded to the party with the greater damages claim after damages are offset. Although CMA appeared to concede at the time that Waterfront would have the larger damages claim—and the Court accordingly ruled that Waterfront would be entitled to prejudgment interest based on the concession—CMA's present calculation of damages provides that it, and not Waterfront, will have the higher damages claim at the end of the day and thus be entitled to prejudgment interest. Given the change in the state of the record, the Court is not bound by its earlier ruling to the extent it holds that Waterfront alone is the party entitled to prejudgment interest.

## LEGAL STANDARD

"Contract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at that time; consequential damages beyond the expectations of the parties are not recoverable." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994). "In contrast, tort damages are awarded to compensate the victim for injury suffered. For the breach of an obligation not arising from contract, the measure of damages is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." *Ash v. N.*

United States District Court
Northern District of California

1   *Am. Title Co*., 223 Cal. App. 4th 1258, 1268-70 (2014) (internal quotation marks, citations, and

2   alterations omitted).   This limitation on available contract damages "serves to encourage

3   contractual relations and commercial activity by enabling parties to estimate in advance the

4   financial risks of their enterprise." *Applied Equip. Corp.*, 7 Cal. 4th at 515.  Parties may

5   voluntarily assume the risk of liability for "unusual damages" under certain circumstances;

6   specifically,

7           they must be told, at the time the contract is made, of any special
            harm likely to result from a breach. Alternatively, the nature of the
8           contract or the circumstances in which it is made may compel the
            inference that the defendant should have contemplated the fact that
9           such a loss would be the probable result of the defendant's breach.
            Not recoverable as special damages are those beyond the
10          expectations of the parties.  Special damages for breach of contract
            are limited to losses that were either actually foreseen or were
11          'reasonably foreseeable' when the contract was formed.

12  *Ash*, 223 Cal. App. 4th at 1269-70 (internal quotation marks, citations, and alterations omitted).

13                                        **DISCUSSION**

14          To bring this litigation to a close, the parties' ask the Court to rule on several legal and

15  factual issues that remain in dispute.  Those issues derive from the parties' competing damages

16  claims owing to breaches of Lease 7006 on both sides.  The Court discusses CMA's and

17  Waterfront's damages in turn.

18          **A.      CMA's Damages**

19          CMA's damages arise from Waterfront's breach of the purchase option provision.  CMA

20  contends that its damages can be divided into two categories: 1) damages related to the 4,590

21  containers that CMA returned Waterfront, and 2) damages related to the 2,590 containers that

22  CMA purchased from Waterfront on February 27, 2014.  Although the Court ultimately concludes

23  that the two groups of containers should be treated the same in terms of damages, the Court will

24  address the groups of containers separately.

25                  **1.      The containers that CMA returned to Waterfront**

26          CMA contends that the measure of damages for the returned containers should be

27  calculated using the formula provided in California Commercial Code Section 2713; namely, the

28  difference between the market price at the time when the buyer learned of the breach and the

4

United States District Court
Northern District of California

contract price. While Waterfront also states that CMA's damages should be calculated based on the "market price," Waterfront asserts that the Court should augment Section 2713 and calculate "market price" based on what CMA could have actually sold those containers for if Waterfront had not breached.

As an initial matter, the Court concludes that Section 2713 applies to this case, and no deviation from its damages calculation is warranted. Section 2713, titled "Buyer's damages for non-delivery or repudiation," provides:

> (1) Subject to the provisions of this division with respect to proof of market price (Section 2723),[1] the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this division (Section 2715), but less expenses saved in consequence of the seller's breach.

> (2) Market price is to be determined as of the place for tender or, in cases of rejection after arrival or revocation of acceptance, as of the place of arrival.

---

[1] Section 2723 provides:

> (1) If an action based on anticipatory repudiation comes to trial before the time for performance with respect to some or all of the goods, any damages based on market price (Section 2708 or Section 2713) shall be determined according to the price of such goods prevailing at the time when the aggrieved party learned of the repudiation.

> (2) If evidence of a price prevailing at the times or places described in this division is not readily available the price prevailing within any reasonable time before or after the time described or at any other place which in commercial judgment or under usage of trade would serve as a reasonable substitute for the one described may be used, making any proper allowance for the cost of transporting the goods to or from such other place.

> (3) Evidence of a relevant price prevailing at a time or place other than the one described in this division offered by one party is not admissible unless and until he has given the other party such notice as the court finds sufficient to prevent unfair surprise.

Cal. Comm. Code § 2723.

United States District Court
Northern District of California

1    Cal. Comm. Code § 2713.  As this Court has already found as a matter of law, "Waterfront

2    breached [*i.e.*, repudiated] the purchase option when it failed to perform its promise to issue an

3    invoice upon CMA's notification of its intent to exercise the option."  (Dkt. No. 35 at 13.)  Thus,

4    CMA is owed the difference between the market price of the containers Waterfront agreed to sell

5    and the contract price.

6          Waterfront, however, contends that the definition of "market price" should be changed so

7    that it takes into account a scenario in which CMA retained possession of the containers and sold

8    them itself in the normal course of business.  (*See* Dkt. No. 77 at 8 ("Waterfront submits that the

9    proper measure of damages is what CMA could have sold the containers for if the purchase option

10   had been concluded.").)  Waterfront asserts that this definition of market price should be adopted

11   because it would put CMA "in as good a financial position as if the breach of the purchase option

12   had not occurred."  (*Id.*)  According to Waterfront, the Court should consider the evidence

13   presented at trial regarding resale options that CMA either intended to make or that were most

14   likely available to CMA had Waterfront not breached; namely, a sale/leaseback transaction or a

15   bulk sale of all the containers.  The Court is not persuaded.

16         Waterfront's proposed market price definition eviscerates the goals of predictability and

17   standardization that drive contract damages awards.  As noted above, "[c]ontract damages are

18   generally limited to those within the contemplation of the parties when the contract was entered

19   into or at least reasonably foreseeable by them at that time; consequential damages beyond the

20   expectations of the parties are not recoverable."  *Applied Equip. Corp.*, 7 Cal. 4th at 515.  "This

21   limitation on available damages serves to encourage contractual relations and commercial activity

22   by enabling parties to estimate in advance the financial risks of their enterprise."  *Id.*  If

23   Waterfront's definition were to be adopted, it would transform Section 2713's straightforward

24   application of "market price at the time when the buyer learned of the breach" with a factual

25   examination of the buyer's actual or intended use of the goods once in the buyer's possession—in

26   other words, a rewriting of the statute.  Waterfront appears to argue that this case presents a

27   special circumstance because CMA (the buyer) had possession of the goods when Waterfront (the

28   seller) breached.  But that fact, however unique, does not require deviation from Section 2713.  To

United States District Court
Northern District of California

6

be sure, there may be—and in this case, there are—offsetting damages caused by the buyer's simultaneous collection of damages under Section 2713 and retention of the goods; however, such an additional layer of damage calculation does not warrant departing from Section 2713.

Waterfront's reliance on *Allied Canners & Packers, Inc. v. Victor Packing Co.*, 162 Cal. App. 3d 905 (1984) is inapposite.  In *Allied Canners*, the seller breached a contract to sell raisins to a distributer following a rain storm that devastated the raisin market.  The *Allied Canners* court, fearful of a windfall to the buyer, held that the market price-contract price differential could be substituted for the buyer's actual loss because "(1) 'the seller knew that the buyer had a resale contract'; (2) 'the buyer has not been able to show that it will be liable in damages to the buyer on its forward contract'; and (3) 'there has been no finding of bad faith on the part of the seller . . . .'" *KGM Harvesting Co. v. Fresh Network*, 36 Cal. App. 4th 376, 387 (1995) (quoting *Allied Canners*, 162 Cal. App. 3d at 915).  This case does not fall under *Allied Canners*' exception to Section 2713 because there is no evidence in the record that CMA had a resale contract at the time Lease 7006 was made, let alone that Waterfront knew about it.  That CMA contemplated entering into one at some point after contract formation—which Waterfront does not appear to have been aware of until well after litigation commenced—does not change the analysis.  Further, the Court is unpersuaded that *Allied Canners* should be extended beyond the circumstances presented in that case.  The *KGM Harvesting* court, which ultimately distinguished *Allied Canners*, voiced "serious reservations" about whether "the result in *Allied Canners*, with its emphasis on the good faith of the breaching party, is appropriate in an action seeking damages under section 2713."  36 Cal. App. 4th at 389.  The court noted that *Allied Canners* "has been sharply criticized" by commentators and at least one sister-state court opinion for "ignor[ing] the clear language of section 2–713's compensation scheme to award expectation damages in accordance with the parties' allocation of risk as measured by the difference between contract price and market price on the date set for performance."  *Id.* 388-89 (quoting Schneider, UCC Section 2–713: A Defense of Buyers' Expectancy Damages, 22 Cal. W. L. Rev. 233, 264 (1986)).

The Court now turns to the question of what the market price was "at the time when the buyer learned of the breach."  Cal. Comm. Code § 2713(1).  As an initial matter, the "time when

7

the buyer learned of the breach" is May 1, 2012—the date on which the parties agree the lease terminated and Waterfront failed to cure its anticipatory breach.  The market price of the containers as of May 1, 2012 is not known with certainty.  CMA's expert, Roger Passal of MICP Capital, looked at three main sources of sales data to reach his ultimate opinion as to market price as of May 1, 2012:

- data from The Harrison Report, an industry publication, for average container prices for all of 2012
- CMA sales data of 15-to-16-year-old containers between February and May 2012
- Waterfront sales data of the actual containers returned by CMA in the latter half of 2012

(Plaintiff's Trial Exhibit No. 27.)  Mr. Passal used a blend of this data and his own thoughts about the market to reach his opinion of the market prices for the containers in May 2012.[2]  The problem with Passal's opinion is that it bypasses the most straightforward indicator of market price—the price at which Waterfront sold the containers in the latter half of 2012 in the relevant locations around the world—in favor of an ultimately subjective opinion.[3]  At oral argument following the close of evidence, the parties agreed that the market price did not materially differ from May 1, 2012 to the end of 2012; thus, the Court finds that Waterfront's world-average sale figures of the actual containers in 2012 is the market price of those containers on May 1, 2012 for purposes of Section 2713.  Those prices are:

- 20-foot containers:          $1,347
- 40-foot containers:          $1,897
- 40-foot cube containers:     $2,125

Mr. Passal's calculation for the prices obtained by Waterfront for sales in 2012 minus the purchase option prices provides a Section 2713 damages amount of $3,158,290.  (*See* Plaintiff's Trial Exhibit No. 31.)  Waterfront does not challenge this calculation.  The Court accordingly

---

[2] Mr. Passal's ultimate opinion as to the world-average market price is as follows: 20-foot: $1,515; 40-foot: $2,125; and 40-foot cube: $2,325.  (Plaintiff's Trial Exhibit No. 33.)

[3] In regards to location, Passal opined that the location of the containers Waterfront sold in 2012 "really didn't" affect his evaluation of the market price because the location of Waterfront's sales roughly matched the location of the containers when Waterfront breached the purchase option. (Dkt. No. 73 at 105:20-106:15.)

1   finds that CMA is entitled to $3,158,290 in damages for Waterfront's breach of the purchase

2   option with respect to the returned containers.

3              **2.      The containers that CMA purchased from Waterfront**

4        Following this Court's Order granting CMA's request for specific performance of the

5   purchase option provision, CMA purchased the remaining 2,590 containers at the prices set out in

6   the purchase option provision.  The total sale price was $2,509,550 and the sale was consummated

7   on February 27, 2014.  CMA argues that it is entitled to damages related to those containers for 1)

8   the per diems paid between May 1, 2012 and February 27, 2014, and 2) diminution in value

9   between May 1, 2012 and February 27, 2014.

10       The order of specific performance does not preclude an award of damages.  California

11  Commercial Code Section 2716 provides that "[t]he decrees for specific performance may include

12  such terms and conditions as to payment of the price, damages, or other relief as the Court may

13  deem just."  Cal. Comm. Code § 2716(2).  The Court concludes that, as with the returned

14  containers discussed above, CMA's measure of damages for Waterfront's breach of the purchase

15  option with respect to the purchased containers is the difference between the market price on May

16  1, 2012 and the purchase option prices.  As discussed above, Section 2713's measure of damages

17  provides a straightforward damages calculation that extends to *all* the containers, not just the

18  returned containers.  Treating the containers the same is logical and consistent with Section 2713's

19  goal of awarding damages in accordance with the parties' allocation of risk at the time of contract

20  formation.  Neither party has articulated any reason why the two groups of containers should be

21  treated differently for purposes of measuring damages.  Further, awarding CMA such damages

22  provides each party precisely what it bargained for: CMA obtains the containers at the value of the

23  May 2012 market price and Waterfront receives in return the previously-agreed to payment

24  amount.

25       It would not be "just" to award CMA the difference between the May 2012 market price

26  and the purchase sale option price *and* the per diem it owes for its use of the containers until it

27  paid the purchase price.  Because CMA did not return the containers following the termination of

28  the lease in May 2012, it breached Lease 7006—a contract separate from the purchase option—

United States District Court
Northern District of California

9

and owed per diem payments for each container that was unreturned. (Dkt. No. 19.) CMA argues that those per diem payments are compensable as damages for *Waterfront's* breach of the purchase option. On the one hand, CMA would not be obligated to make the per diem payments in the first place if Waterfront had not breached the purchase option; in other words, CMA kept the containers and incurred per diem liability only because Waterfront failed to honor its promise. On the other hand, CMA was not required to maintain possession of the containers and incur the per diem charges; rather, CMA could have simply returned the containers and avoided the charges as it was required to do under Lease 7006; CMA, in fact, did just that with several thousand containers. Further, it is undisputed, and CMA's CEO testified at trial, that the containers that remained in CMA's possession were used in the normal course of business; thus, CMA was using the containers as if it was still leasing them from Waterfront and thus payment of per diem fees for that use is not unwarranted. Ultimately, the Court is not persuaded that CMA's incursion of per diem fees for the purchased containers should be awarded as damages when CMA does not seek the same damages for the returned containers; in fact, CMA concedes that it owes Waterfront per diem fees for the returned containers. Because CMA provides no logical reason to treat the groups of containers differently, the Court will treat them the same: CMA's per diem payments are not CMA's damages.

In sum, as with the returned containers, CMA's measure of damages for Waterfront's breach of the purchase option with respect to the purchased containers is the difference between the market price on May 1, 2012 and the purchase option prices. The calculation for those damages is set forth below.

Differential between May 1, 2012 market price and purchase option prices (*see* Pl.'s Trial Ex. No. 31):

- 20-foot containers:           $597
- 40-foot containers:           $697
- 40-foot cube containers:      $825

Differential multiplied by the number of purchased containers (*see* Pl.'s Trial Ex. No. 6):

- 20-foot containers:           $597 x 1,513 =  $903,261

United States District Court
Northern District of California

- 40-foot containers:            $697 x 253   = $176,341
- 40-foot cube containers:    $825 x 824   = $679,800

Total: $1,759,402

### 3.    CMA's total damages

The Court finds that CMA's damages total $4,917,692.  This figure is calculated by adding $3,158,290 (damages for the returned containers) to $1,759,402 (damages for the purchased containers).

## B.    Waterfront's Damages

Waterfront claims the following damages for CMA's failure to timely return the containers: 1) total loss charges and per diem fees for use of the containers following May 1, 2012 under Lease 7006 and Lease 5004 (a related lease agreement between the parties); and 2) diminution in value.[4]

### 1.    Per diem and total loss charges

This Court previously ruled that CMA owes per diem charges under Lease 7006 for each container that was unreturned following the termination of Lease 7006.  (Dkt. No. 19.)  Beyond its contention that any per diem fees should be offset as damages arising from Waterfront's breach, CMA does not challenge Waterfront's calculation of per diem fees owed under Lease 7006 presented at trial.  That figure, which includes $123,926 in interest through April 30, 2014, is $2,508,070.  (Def.'s Trial Ex. S at 3.)[5]  CMA also stipulates to the "total loss" figure sought by Waterfront, which including interest totals $33,585.  (*Id.*)  The Court accordingly finds that Waterfront's total damages under Lease 7006 for per diem and total loss charges is $2,541,655.

---

[4] Waterfront also asserts for the first time in its post-trial brief that it is entitled to damages for CMA's conversion of Waterfront property.  Waterfront's counter-complaint, however, does not include a claim for conversion and Waterfront has not moved to amend its complaint.  Even if it did make such a motion, it would be denied as untimely.

[5] Along with its post-trial brief, Waterfront submitted an updated interest calculation; however, the new interest calculation—$171,918—is not explained.  (*See* Dkt. No. 77 at Attachment 1 &2.) The interest computation table provided to the Court contradicts the evidence submitted at trial that the interest as of April 30, 2014 was $123,926; the table shows that the interest due on that date was actually $171,918, the same amount Waterfront contends is due now.  Because Waterfront fails to explain the discrepancy, the Court finds that the interest figure presented at trial is the interest owing under Lease 7006.

United States District Court
Northern District of California

Under Lease 5004, CMA owes Waterfront $207,956 for rental, drop-off, and other rental-related charges. This figure includes $31,198 in interest through April 30, 2014.[6] CMA also stipulates to these calculations. The Court accordingly finds that Waterfront's total damages under Lease 5004 for per diem and related charges is $207,956.

The Court therefore finds that Waterfront's total damages under both leases is $2,749,611.

### 2.    Failure to timely return the containers

Waterfront next argues that it is owed damages for CMA's breach of its promise under Lease 7006 to return all of the containers within six months of May 1, 2012. (*See* Pl.'s Trial Ex. No. 1, Typed Clause 17 (providing for a six-month builddown period).) Waterfront asserts that the failure to timely return the containers caused Waterfront to sell the containers in a depressed market. No evidence has been presented that at the time of contracting the parties expected that Waterfront—a container *leasing* company—would sell the containers following the six-month builddown period. *See Applied Equip. Corp.*, 7 Cal. 4th at 515 ("[C]onsequential damages beyond the expectations of the parties are not recoverable."). What was most likely expected was that Waterfront would lease those containers to another company; Waterfront is being compensated for such damages with the per diem fees as provided for in the contract. Waterfront's request for damages for diminution in value is accordingly denied.

### C.    The Parties' Damages After Offset

As set forth above, CMA's damages total $4,917,692 while Waterfront's damages total $2,749,611. After subtracting out the amount CMA owes Waterfront, the Court finds that Waterfront owes CMA $2,168,081.

### D.    Prejudgment Interest

California law provides that "[e]very person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day." Cal. Civ. Code §

---

[6] As with Waterfront's updated interest charge for Lease 7006, Waterfront fails to explain the increase in interest from $31,198 to $36,879 under Lease 5004. (*See* Dkt. No. 77 at Attachment 1 & 2.) The Court accordingly finds that the interest figure presented at trial is the interest owing under Lease 5004.

United States District Court
Northern District of California

3287(a).  "Under this provision, prejudgment interest is allowable where the amount due plaintiff is fixed by the terms of the contract, or is readily ascertainable by reference to well-established market values.  On the other hand, interest is not allowable where the amount of the damages depends upon a judicial determination based on conflicting evidence."  *Leaf v. Phil Rauch, Inc.*, 47 Cal. App. 3d 371, 375 (1975) (citations omitted).  Further, "[a]ny legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before."  *Id.* at § 3289(a); *see also In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007) ("[S]tate law applies to [a] claim for prejudgment interest under state law unless federal law preempts it.").

Only the party with the greater amount of damages may collect prejudgment interest under California law.  *See Great W. Drywall, Inc. v. Roel Const. Co., Inc.*, 166 Cal. App. 4th 761, 770 (2008) ("Because Roel's award exceeds Great Western's award . . . Great Western may not recover any prejudgment interest.").  Such prejudgment interest, however, may be collected on only the amount remaining after the damages of the party with the greater claim are offset; that is, "only the balance bears interest."  *Great Western*, 166 Cal. App. 4th at 768 (internal quotation marks omitted); *see also Coleman Eng'g Co. v. N. Am. Aviation, Inc.*, 65 Cal. 2d 396, 409 (1966) ("[O]ffsets of the defendant, even where unliquidated, do not preclude the allowance of interest *on the balance* of the plaintiff's claim.") (emphasis added).

Because the Court finds that CMA has the greater amount of damages, the Court further finds that CMA is entitled to prejudgment interest on the balance of its damages.  In addition, because the "amount due . . . is readily ascertainable by reference to well-established market values," that is, Waterfront's actual sales of the containers in 2012, prejudgment interest is not restricted on grounds of uncertainty.  *Leaf*, 47 Cal. App. 3d at 375; *see also Bare v. Richman & Samuels of N.Y.*, 60 Cal. App. 2d 413, 419 (1943) (ascertaining market price of grapes based on submitted evidence and awarding liquidated damages from the date of breach of the sales agreement; holding that "[t]he mere fact that proof is required to determine *the market value* of property on a designated date, will not prevent the allowance of interest under section 3287 of the Civil Code").

The formula for calculating prejudgment interest is as follows:

United States District Court
Northern District of California

13

I = P x r x t

- P is the principal amount, $2,168,081

- r is the interest rate, 1.5% per month (0.015) pursuant to Lease 7006

- t is the time from the breach (May 1, 2012) to final judgment (August 29, 2014), 27.94 months

Thus, the Court finds that prejudgment interest for CMA's damages is $908,642.75 ($2,168,081 x .015 x 27.94).

## CONCLUSION

For the foregoing reasons, the Court finds in favor of CMA and against Waterfront and awards CMA $2,168,081 in damages and $908,642.75 in prejudgment interest, for a total award of $3,076,723.75.  This Memorandum and Order constitutes the finding of facts and conclusions of law required by Federal Rule of Civil Procedure 52(a)(1).  A separate judgment will follow.

**IT IS SO ORDERED.**

Dated: August 29, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California

14